IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHASTITY KIRVEN,          §
         §
         Plaintiff,          §
         §
v.          §          Civil Action No. 3:05-CV-1774-N
         §
THE THOMSON CORPORATION          §
d/b/a PRACTITIONER'S PUBLISHING          §
COMPANY,          §
         §
         Defendant.          §

## ORDER

Before the Court is Defendant Thomson Corporation's ("Thomson") Motion for Summary Judgment [28]. With respect to Kirven's claim for retaliatory disparate treatment based on the issuance of the Performance Improvement Plan, the Court determines that fact issues preclude summary judgment. With respect to Kirven's claims for discriminatory and retaliatory hostile work environment, retaliatory disparate treatment based on additional challenged actions, and constructive discharge, the Court grants the motion because Kirven has failed to raise a genuine issue of material fact in support of these claims.

### I. KIRVEN'S EMPLOYMENT WITH THOMSON

This case arises out of Kirven's employment at Practitioner's Publishing Company ("PPC"), a Thomson company. In August of 2004, Thomson hired Kirven, an African-American, as PPC's Customer Service Manager. Following its customary process, Thomson hired a third-party vendor, Verifications Inc., to conduct a background check on Kirven and

verify her current and previous employment.  Kirven, however, began working at PPC before Verifications completed the background investigation.

The background investigation revealed a discrepancy concerning the dates of employment reflected in Kirven's application for a prior job.  In early September 2004, Paul Diebert, a Senior Recruiter in Thomson's Human Resources Department, asked Kirven to provide documentation to verify that she correctly reported the dates of her previous employment in her application.  According to Kirven, Diebert harassed her by unreasonably demanding that she quickly produce her previous tax records to verify her employment dates and by threatening to fire her if she did not provide those records.

Following the exchange with Diebert, Kirven reported to Thomson's Human Resources Department that she had been subjected to harassment and differential treatment because of her race.  Kirven alleges that a few days later, Diebert again harassed her. According to Kirven, Diebert confronted her about reporting the prior incident, demeaned her by calling her "little lady," "honey," and "you people," and further harassed her by putting his arm on her shoulder with his thumb on the side of her neck.  Kirven also reported this incident to Thomson's Human Resources Department.

Thomson undertook an investigation of Kirven's complaints.  In late September, Thomson's Senior Vice President interviewed Kirven, Diebert, and the individuals to whom Kirven initially reported the incidences.  Although the investigation was inconclusive, Thomson instructed Diebert to apologize to Kirven and required him to work from a different Thomson office for a month in order to avoid any contact with Kirven.

ORDER – PAGE 2

Kirven claims that her situation worsened following her initial complaint regarding Diebert's conduct, and that the harassment she experienced at PPC continued until her employment with PPC ended in July 2005. In November of 2004, Kirven filed the first of four charges of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), alleging that Thomson had discriminated and retaliated against her by not allowing her to change the "skill sets" of her subordinates, and by not issuing her a company credit card. In her second EEOC charge, filed in March of 2005, Kirven alleged that she undeservedly received a negative performance review, resulting in the denial of a merit pay raise, and that Thomson did not allow her to accrue vacation time during her short-term disability leave because of her race and in retaliation for filing her initial charge. Kirven filed a third charge of discrimination in April of 2005, alleging that Thomson discriminated and retaliated against her by issuing her a Performance Improvement Plan ("PIP"). Finally, Kirven filed a fourth charge of discrimination and retaliation in June of 2005, alleging that Thomson denied her request for a single day of vacation leave.

In addition to the allegations contained in her various EEOC charges, Kirven highlights several other allegedly discriminatory and retaliatory acts by Thomson. These allegations include: (1) isolating Kirven from the management team and failing to include her in departmental meetings; (2) failing to provide Kirven adequate training; (3) requiring Kirven to meet with her supervisor on a weekly basis; (4) assigning Kirven increased duties not assigned to other managers; (5) denying her request for assistance in handling these additional duties; (7) refusing requests for two days of vacation (in addition to the vacation

denial about which she complained in her EEOC charge); (8) issuing Kirven a Final

Perfomance Improvement Plan; (9) filling Kirven's position while she was on disability

leave; and (10) changing Kirven's classification from Customer Service Manager to Senior

Customer Care Specialist while she was on disability leave.

Kirven also alleges several discriminatory and retaliatory acts that are not directly

related to Thomson.  Specifically, Kirven alleges that: (1) two unidentified men assaulted

Kirven in a public parking garage near PPC's offices; (2) a racial slur was keyed into

Kirven's car while parked in a public parking garage; (3) Kirven received a number of

harassing phone calls from Thomson's main phone number while on disability leave; and (4)

she did not receive a position at NETg, a company related to Thomson, allegedly because

someone at Thomson purposely sabotaged her.

Kirven filed this action in September 2005, asserting claims for discriminatory and

retaliatory disparate treatment, discriminatory and retaliatory hostile work environment, and

constructive discharge pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of

1964.  Thomson moves for summary judgment on all of Kirven's claims.[1]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is a genuine issue as to any material fact and that the moving party is entitled to summary

---

[1] Kirven does not dispute that Thomson is entitled to summary judgment on her claim for discriminatory disparate treatment.  The Court, therefore, grants Thomson's motion for summary judgment with respect to that claim.

judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute over a material fact is genuine if, based on the evidence, a reasonable jury could return a verdict for either party. *Id.* at 252. In ruling on a motion for summary judgment, the Court must accept the nonmoving party's evidence and draw all justifiable inferences in its favor. *Id.* at 255.

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. The moving party may meet this burden by either (1) presenting evidence that affirmatively demonstrates the absence of any genuine issue of material fact, or (2) after adequate time for discovery, demonstrating that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party cannot defeat summary judgment by resting upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue of fact. *Id.* at 324.

### III. KIRVEN'S DISCRIMINATORY HOSTILE WORK ENVIRONMENT CLAIM FAILS

To prevail on her hostile work environment claim based on racial discrimination, Kirven must prove that: (1) she belongs to a protected group; (2) Thomson subjected her to unwelcome harassment; (3) the harassment was motivated by her race; (4) the harassment affected a term, condition, or privilege of her employment; and (5) Thomson knew or should

have known of the harassment and failed to take prompt remedial action. *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003).   When the harassment in question was allegedly committed by a supervisor with immediate or successively higher authority over the plaintiff, the plaintiff need not establish the fifth element. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

The Fifth Circuit has explained that Title VII does not establish a general civility code for the workplace; an employer violates Title VII only when a work environment becomes so abusive as to alter the conditions of employment. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).   For harassment on the basis of race to affect a term, condition, or privilege of employment, it must be sufficiently severe or pervasive, so as to create an objectively hostile or abusive environment. *Id.*   In this sense, Kirven must have subjectively perceived the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).   In determining whether a work environment is abusive, the Court must consider the entirety of the evidence, including the frequency of the conduct, its severity, the degree to which it is physically threatening or humiliating, and the degree to which it unreasonably interferes with the employee's work performance. *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235–36 (5th Cir. 2001).   Incidental or occasional comments, discourtesy, rudeness, or isolated incidents (unless extremely serious) do not amount to actionable harassment under Title VII. *Faragher*, 524 U.S. at 787–88.   Rather, the purpose of Title VII is to prohibit and prevent conduct "that is so severe [or] pervasive that it destroys a protected class member's

opportunity to succeed in the workplace." *Shephard v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999).

### A. Diebert's Conduct

Kirven alleges that Paul Diebert's conduct amounted to actionable harassment under a hostile work environment theory because it created an abusive working environment by interfering with her job responsibilities. Thomson moves for summary judgment on this claim on the grounds that Diebert's alleged harassment was not so severe or pervasive that it affected a term, condition, or privilege of Kirven's employment. The Court agrees with Thomson.

Isolated incidents may support a hostile work environment claim when sufficiently egregious. *Faragher*, 524 U.S. at 788 (noting that "simple teasing, offhand comments, and isolated incidents (*unless extremely serious*) will not amount to discriminatory changes in the terms and conditions of employment") (emphasis added). However, the Court finds that Diebert's conduct, although offensive and boorish, does not amount to the type of conduct that courts have found actionable. First, although Kirven alleges that the encounter with Diebert interfered with her ability to perform her job, she has not presented any evidence to demonstrate how the incident hindered her job performance, let alone how it unreasonably interfered with her performance.[2] Second, the phrases "little lady," "honey," and "you

---

[2]In fact, Kirven maintains that she performed well at PPC. *See* Pl. Resp. to Def. Mot. Summ. J., at 5 (stating that during the first four months of her employment, Kirven increased the telephone service factor, a significant measure of performance, as well as "addressed and slightly improved attendance issues," "[c]reated and implemented new call center procedures," and [h]eld consistent monthly meetings with reps").

people," which Diebert used in referring to Kirven, do not overtly indicate racial animus, nor can they be characterized as the type of severely offensive remarks that have typically supported a hostile work environment claim.[3] Third, although Diebert's placement of his thumb near Kirven's neck could be construed as physically threatening, the degree to which his conduct was physically threatening is merely one factor in the analysis, and the Court finds that it was not objectively so severe as to create an abusive working environment.[4]

### B. Kirven's Other Claims

Kirven highlights numerous other incidents in support of her discriminatory hostile work environment claim, arguing that these incidents, when viewed in light of the encounter with Diebert, amount to actionable harassment. Kirven, however, has failed to offer evidence to show that any of these actions was racially motivated. To support her contention that Thomson acted with racial animus, Kirven points to Diebert's use of the phrase "you people," and asks the Court to view the subsequent complained of actions in light of the fact

---

[3] *Compare Vallecillo v. U.S. Dep't of Hous. & Urban Dev.*, 155 F. App'x 764 (5th Cir. 2005) (holding that reference to a Hispanic employee as "Che Guevara" and an "aggressive Hispanic" was not sufficiently severe or pervasive to constitute a hostile work environment), *and Hayatdavoudi v. Univ. of La. Sys. Bd. of Trs.*, 240 F.3d 1073, 2000 WL 1835143, at *7 (5th Cir. 2000) (holding that a single reference to an Iranian-American employee as a "dog in the desert," which the Court interpreted to refer to an Arabic proverb, did not amount to actionable harassment), *with Walker v. Thompson*, 214 F.3d 614, 626 (5th Cir. 2000) (holding that evidence that plaintiffs were subjected to years of incessant and inflammatory racial epithets, including "nigger," was sufficiently severe or pervasive to alter the conditions of employment).

[4] *See, e.g.*, *Hayatdavoudi*, 2000 WL 1835143, at *7 ("In summary, a primarily verbal altercation, during which nothing more physically threatening than chest 'butting' occurred, is not sufficiently severe to justify relief under Title VII.").

ORDER – PAGE 8

that Kirven was the first African-American manager at PPC.[5] This is not sufficient to survive summary judgment. The fact that a single comment by Diebert could be construed as racially motivated does not support the conclusion that the other actions about which Kirven complains occurred because of her race. Likewise, the fact that Kirven was the first African-American manager at PPC does not, by itself, support an inference that the unfavorable treatment she allegedly received at PPC occurred because of her race. Accordingly, Kirven has failed to show that Thomson subjected her to a hostile work environment because of her race; Thomson is therefore entitled to summary judgment on this claim.

## IV. KIRVEN'S RETALIATION CLAIMS

Kirven alleges that Thomson retaliated against her for making an internal complaint regarding Diebert's investigation and for filing the four EEOC charges. She asserts both a retaliatory disparate treatment claim and a retaliatory hostile work environment claim. Thomson moves for summary judgment on these claims on the grounds that Kirven has failed to establish a prima facie case of retaliation based on either theory or to rebut Thomson's legitimate, nondiscriminatory reasons for its employment actions.

### A. Kirven's Retaliatory Disparate Treatment Claim

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she engaged in activity protected by Title VII; (2) she suffered a materially adverse

---

[5] Although Kirven claims that an unidentified person uttered a racial slur and keyed a racial slur into her car while it was parked in a public parking garage near PPC's offices, she has not offered any evidence to connect these events to Thomson. Therefore, the Court will not consider these events in its analysis.

employment action; and (3) a causal link existed between the protected activity and the adverse employment action. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000). To establish the occurrence of an adverse employment action for purposes of a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action *materially adverse*," meaning that the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2414–15 (2006) (emphasis in original).

A plaintiff may establish a causal link through one of two ways: either by presenting direct evidence of a retaliatory motive or by providing circumstantial evidence to create a rebuttable presumption of a retaliatory motive. *Fabelo v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414–15 (5th Cir. 2003). When the plaintiff provides only circumstantial evidence of retaliation, the Court applies the burden-shifting analysis presented in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993); *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001). Under this analysis, Kirven must first establish a prima facie case, which gives rise to the presumption that the employer acted with retaliatory intent. *See St. Mary's Honor Ctr.*, 509 U.S. at 506–07. Thomson may then rebut this presumption by providing a legitimate nonretaliatory reason for the underlying employment action. *Id.* Once Thomson produces such a legitimate rationale, the presumption of retaliation disappears completely, and the only relevant question is whether Thomson intentionally retaliated against Kirven. *Id.* at 510–11. At this point, the burden again rests with Kirven to produce sufficient evidence to create a

genuine issue of fact as to whether Thomson's stated reasons for its employment actions are "merely pretext for the real, retaliatory purpose." *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005). Kirven may survive summary judgment only by providing probative evidence that her protected activity was the "but-for" cause of Thomson's employment actions. *Id.*

    **1. *The Performance Improvement Plan.*** – Kirven alleges that Thomson retaliated against her for filing her third EEOC charge by issuing her a Performance Improvement Plan in April of 2005. The Court finds that Kirven has provided sufficient evidence to raise a genuine issue of fact as to whether Thomson engaged in unlawful retaliation by issuing the PIP.

    First, Kirven engaged in protected activity by filing an EEOC charge. *See Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995).

    Second, the Court concludes that the issuance of the PIP may qualify as a materially adverse action after *Burlington*.[6] Not all PIPs are identical – some may have a more negative

---

    [6]*See, e.g.*, *Smith v. Quintiles Transnational Corp.*, No. 5:04-CV-657-Oc-10GRJ, 2007 WL 1099108, at *7 (M.D. Fla. Apr. 10, 2007) ("The Court finds that, based on the facts of this case, both the placement of the Plaintiff on the PIP and her termination constituted adverse employment actions."); *Sherrel v. Winter*, Civil No. 05-00034-JMS/BMK, 2007 WL 61058 (D. Haw. Jan. 8, 2007) ("[A] reasonable worker would likely find . . . being placed on a PIP plan to be materially adverse since such actions could embarrass, stress, or intimidate an employee in such a way as to discourage him from pursuing future discrimination claims."); *Arensdorf v. Snow*, No. H-05-2622, 2006 WL 3302532 (S.D. Tex. Nov. 13, 2006) (Johnson, M.J.) ("The Court finds that [the issuance of the PIP] might well dissuade a reasonable employee from making or supporting a charge of discrimination.").

impact than others, depending on the circumstances surrounding their issuance.[7]  As the
Supreme Court explained in *Burlington*, "context matters" in determining whether a given
action is materially adverse, for the significance of an employer's act "often depends on a
constellation of surrounding circumstances, expectations, and relationships which are not
fully captured by a simple recitation of words used or the physical acts performed."  126
S.Ct. at 2415.  Furthermore, the Court notes that its treatment of the PIP is consistent with
that of other courts, which have found, in applying *Burlington*'s fact-specific standard, that
fact issues concerning whether a given act is materially adverse preclude summary judgment.
*See Moon v. Gonzalez*, No. 3:05-CV-102, 2007 WL 954783, at *17 (M.D. Tenn. Mar. 29,
2007); *White v. Home Depot, U.S.A., Inc.*, Civil Action No. 05-CV-00683-PSF-MJW, 2006
WL 2226198, at *15 (D. Colo. Aug. 3, 2006).  Accordingly, the Court holds that the
summary judgment record raises a fact issue regarding whether placing Kirven on the PIP
was a materially adverse action.

    Thomson urges the Court to find that the PIP is not materially adverse because it did
not deter Kirven from filing another charge of discrimination and retaliation.  The Court
notes, however, that whether *Kirven* was deterred from filing an EEOC charge is not the

---

    [7] *Compare Smith*, 2007 WL 1099105, at *7 (finding that issuance of PIP was
materially adverse because it was "an explicitly disciplinary measure, the implementation of
which had a material adverse effect on the Plaintiff employment [sic] and resulted in an
increased workload, increased reporting requirements, and increased supervision") *with
Toulan v. DAP Prods.. Inc.*, Civil No. CCB-05-2254, 2007 WL 172522, at *9 (D. Md. Jan.
17, 2007) (finding that issuance of PIP was not materially adverse because it "had no tangible
consequence on the terms or conditions of [the plaintiff's] employment" and was consistent
with the plaintiff's supervisors' perceptions of her work).

standard.  Rather, the Court must consider whether the employment action at issue would dissuade a reasonable employee from filing or supporting a charge of discrimination or retaliation.  *Burlington*, 126 S.Ct. at 2414–15.

Third, the Court concludes that Kirven has adequately raised a fact issue regarding causation.  Thomson maintains that Shari Phelps, Kirven's immediate supervisor, issued Kirven the PIP because: (1) she made inappropriate comments to her subordinates; (2) sent unprofessional emails to other Thomson employees; (3) she failed to be involved in the day-to-day operations of her group; (4) she needed to improve her mentoring skills; and (5) she secretly recorded conversations she had with other Thomson employees.  However, in her declaration, Kirven states that in issuing the PIP, Phelps told Kirven that "this is what you get for going to the EEOC instead of just coming to me."  If proven, this would be direct evidence of pretext.  Kirven has thus provided sufficient evidence to raise an issue of material fact as to whether Phelps acted with retaliatory motive in issuing the PIP.

Accordingly, the Court denies Thomson's motion for summary judgment with respect to Kirven's retaliation claim based on the issuance of the PIP.

**2. Kirven's Other Claims. –** With respect to her additional claims of retaliation, Kirven relies only on circumstantial evidence to support those claims; thus, the burden-shifting framework of *McDonnell Douglas* applies.[8]  Thomson has provided a legitimate,

---

[8] Phelps's comment only serves a direct evidence of retaliatory motive with respect to the issuance of the PIP.  *See Jenkins v. Methodist Hosp. of Dallas*, 478 F.3d 255, 261–62 (5th Cir. 2007) ("[I]n order for comments in the workplace to provide sufficient evidence of discrimination, they must be . . . related to the employment decision at issue.)

nonretaliatory reason for each of the additional challenged employment actions. Therefore, even assuming Kirven can establish a prima facie case with respect to these actions, she must still provide probative evidence tending to show that Thomson's proffered reasons are pretext for retaliation. Kirven advances several arguments attempting to show pretext in hopes of preventing summary judgment; each of these arguments fails.

Kirven first argues that Thomson's asserted reason for Diebert's post-hiring investigation of her prior employment – to verify her prior employment and reconcile the date discrepancies in her application – is pretext because company policy prohibits the termination of an employee based on the results of a belated background check. Thus, according to Kirven, Thomson had no legitimate reason for conducting the investigation. The Court, however, does not see the relevance of this argument. Diebert began his investigation before Kirven engaged in anything that could be construed as protected activity. In fact, Diebert's investigation was the subject of her first complaint of discrimination to Thomson's management; thus, the investigation itself could not be retaliatory. *See Peace v. Harvey*, 207 F. App'x 366, 368 (5th Cir. 2006) ("A number of the incidents upon which [plaintiff] relies *pre-date* her EEOC complaint, and this cannot logically support a retaliation claim.") (emphasis in original).[9]

---

[9] Kirven appears to argue that the second encounter she had with Diebert was in retaliation for her internal complaint of discrimination. However, the Court finds that Diebert's alleged harassment did not amount to a materially adverse employment action. Although unpleasant, the exchange did not affect the status of Kirven's employment, nor did did it result in any professional injury or harm, such that a reasonable person would be dissuaded from filing a charge of discrimination.

Kirven also argues that Thomson's knowledge of her discrimination complaints, coupled with the close temporal proximity of the allegedly adverse employment actions, indicates that Thomson's proffered reasons for its actions are false. This evidence, however, does not establish that Kirven's protected activity was the "but-for" cause of Thomson's actions, nor is it sufficient to support an inference that Thomson's proffered rationales are false. *See McCarthy v. Primedia Workplace Learning, L.P.*, No. 3:04-CV-760-M, 2005 WL 3428191, at *3 (N.D. Tex. Dec. 6, 2005) (holding that knowledge of plaintiff's protected activity and the temporal proximity between that activity and the adverse employment action was not sufficient to establish pretext); *Price v. City of Terrell*, No. Civ. 3:99-CV-269-D, 2001 WL 1012697, at *6 (N.D. Tex. Aug. 15, 2001) (citing *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)) ("Temporal proximity between a protected activity and an adverse employment action, while relevant to the determination [of] whether a decision was retaliatory, is not alone sufficient to establish pretext.").

Furthermore, Kirven is unable to buttress her reliance on Thomson's knowledge of her complaints and the temporal proximity of its actions with any evidence showing retaliation. Kirven attempts to strengthen her claim by arguing that her immediate supervisor, Shari Phelps, who was responsible for many of the actions about which Kirven complains, admitted to feeling "harassed" by Kirven's frequent complaints of discrimination. However, Phelps clarified in her deposition that she felt frustrated with Kirven because she did not first discuss her complaints with Phelps, not simply because Kirven filed numerous EEOC charges. App. to Pl. Resp. to Def. Mot. for Summ. J., at 99–100. Moreover, Kirven

ORDER – PAGE 15

has not pointed to any evidence tending to show that Phelps acted on her feelings of frustration. Based on the evidence before the Court, a reasonable juror would have to indulge in speculation in order to conclude that Thomson retaliated against Kirven. This is insufficient to survive summary judgment.

### B. Kirven's Retaliatory Hostile Work Environment Claim

The Fifth Circuit has implicitly recognized that a plaintiff may establish a claim for retaliatory hostile work environment by demonstrating that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . ." *See Davila v. White*, 61 F. App'x 918 (5th Cir. 2003) (analyzing plaintiff's retaliation claim under the framework set out for a hostile work environment claim). To establish such a claim, however, the plaintiff must also show that the alleged harassment stems from a retaliatory motive. *See Kebiro v. Walmart*, 193 F. App'x 365 (5th Cir. 2006) (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 354 (5th Cir. 2001)) (explaining that the alleged harassment must be based on a protected characteristic in order to support a hostile work environment claim). As previously discussed, Kirven has failed to show that any of the allegedly adverse employment actions about which she complains, short of the issuance of the PIP, occurred because she engaged in protected activity. The PIP, by itself, is neither severe nor pervasive enough to support a hostile work environment claim. *See Arensdorf*, 2006 WL 3302532, at *11 ("[The employer's] actions in evaluating Plaintiff's performance, counseling her on performance deficiencies, and

placing her on PIP are not harassment, rather, they are personnel decisions related to Plaintiff's job performance."); *Humphries v. Principi*, No. 5:03CV1266 BO3, 2005 WL 4598206, at *5 (E.D.N.C. Aug. 23, 2005) ("The decision to place Plaintiff on a PIP was not subjectively severe or pervasive enough to alter the conditions of employment. Nor can it be characterized as an objectively offensive act."). Thus, the Court concludes that Kirven's claim for retaliatory hostile work environment fails.

### V. KIRVEN'S CONSTRUCTIVE DISCHARGE CLAIM FAILS[10]

Kirven also claims that she was constructively discharged based on race and retaliation, effective as of July 21, 2005. To establish a claim for constructive discharge, the plaintiff must show that, because of a prohibited motive, her employer made her working conditions so intolerable that "a reasonable person would have felt compelled to resign." *Penn. State Police v. Suders*, 542 U.S. 129, 141, 146 (2004).

Kirven relies on the same allegedly adverse employment actions in support of her constructive discharge claim as she does her claim for discriminatory and retaliatory hostile work environment. A constructive discharge claim, however, requires a "greater showing of severity or pervasiveness of harassment than the minimum required to prove a hostile work environment." *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998). As

---

[10] Kirven argues that her constructive discharge claim is not subject to dismissal at this time because Thomson failed to include this claim in the "Summary" section of its summary judgment brief, in violation of Local Rule 56.3(a). However, besides pointing out Thomson's technical error (which Thomson denies), Kirven has wholly failed to enlighten the Court as to how the error has prejudiced Kirven. The Court is not inclined to sanction Thomson for such a small, harmless oversight.

previously discussed, Kirven has failed to establish her claims for racially discriminatory and retaliatory hostile work environment. Accordingly, Kirven's constructive discharge claim also fails.

### CONCLUSION

Kirven has failed to raise a genuine issue of material fact in support of each of her claims for discriminatory and retaliatory hostile work environment and for constructive discharge. However, issues of fact preclude summary judgment on Kirven's retaliatory disparate treatment claim based on the issuance of the PIP. Accordingly, the Court grants in part and denies in part Thomson's motion for summary judgment.

Signed June 25, 2007.

David C. Godbey
United States District Judge